

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00016-CV

**IN THE INTEREST OF S.F.E.J., A.M.L.E., E.S.H.F.E.,
A.D.C.F.E.**, and **L.L.R.F.E.**, Children

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01338
Honorable Raul Perales, Judge Presiding

Opinion by:     Rebeca C. Martinez, Chief Justice

Sitting:     Rebeca C. Martinez, Chief Justice
             Adrian A. Spears II, Justice
             Velia J. Meza, Justice

Delivered and Filed: July 2, 2025

MODIFIED; AFFIRMED AS MODIFIED

This appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant E.M.C. ("Mother"), the biological mother of S.F.E.J., A.M.L.E., E.S.F.E., A.D.F.E., and L.L.R.F.E.[1] In Mother's first, second, third, and fourth issues, she argues that the evidence is legally and factually insufficient to support the trial court's findings that: (1) Mother allowed the children to remain in a physically or emotionally dangerous condition or surrounding (subsection (D) endangerment by conditions or surroundings); (2) Mother engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers

---

[1] To protect the identity of the minor children in this appeal, we refer to the children, mother, and others by pseudonyms or initials. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

the physical or emotional well-being of the children (subsection (E) endangerment by conduct); (3) Mother used a controlled substance, as defined by Chapter 481 of the Texas Health and Safety Code, in a manner that endangered the health or safety of the children, and failed to complete a court-ordered substance abuse treatment program, or after completion of a court-ordered substance abuse treatment program, continued to abuse a controlled substance (subsection (P) use of a controlled substance in an endangering manner); and (4) termination of Mother's parental rights is in the best interest of the children (subsection (2) best interest). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)–(E), (P), (b)(2). In Mother's fifth issue, she argues that (5) the trial court abused its discretion in making its conservatorship finding upon a legally and factually insufficient termination order. We modify the trial court's termination order and affirm as modified.

## I. BACKGROUND

In September 2023, the Texas Department of Family and Protective Services (the "Department") initiated the underlying proceeding by filing a petition to terminate the parental rights of Mother and S.F.E. ("Father"), the biological father of the children. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as the children's "temporary sole managing conservator." In a "Status Hearing Order," the trial court found that, although Mother had not signed a service plan, she had reviewed and understood it. The Status Hearing Order approved the service plan and made it an order of the court. Meanwhile, S.F.E.J., who was nine years old, A.M.L.E., who was four years older, and E.S.F.E., who was three years old, were placed with non-relative foster parents. A.D.F.E., who was two years old, and L.L.R.F.E., who was four months old, were placed with a different non-relative foster family.

The Department's request to terminate the parent-child relationship proceeded to a bench trial. At the December 2024 trial, the trial court considered the testimony of: (1) Lori Dickens, a

Department supervisor; (2) Monica Hernandez, a Department conservatorship caseworker; (3) Victoria Caylor, a licensed professional counselor who provided individual therapy to Mother; (4) Teresa Frias, a licensed professional counselor who provided individual therapy to S.F.E.J. and virtual joint therapy to S.F.E.J. and Mother; (5) N.B., the foster mother to S.F.E.J., A.M.L.E., and E.S.F.E.; and (6) E.C., the foster father to A.D.F.E. and L.L.R.F.E.

After the trial, the trial court signed an order stating that it found by clear and convincing evidence that termination of Mother's parental rights was supported by the predicate grounds of (1) subsection (D) endangerment by conditions or surroundings, (2) subsection (E) endangerment by conduct, and (3) subsection (P) use of a controlled substance in an endangering manner. *Id*. § 161.001(b)(1)(D)–(E), (P). The trial court also found by clear and convincing evidence that termination of the parent-child relationship between Mother and the children is in the children's best interest (subsection (2) best interest).[2] *Id*. § 161.001(b)(2). The order designates the Department as the children's permanent managing conservator. Mother timely appeals.

## II. DISCUSSION

### A. Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). In reviewing

---

[2] The order terminates S.F.E.'s parental rights. S.F.E. did not appeal, and he is not a party to this appellate proceeding.

the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## B.     Law on Endangerment

Subsection 161.001(b)(1)(D) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Subsection (E) allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id*. § 161.001(b)(1)(E). Endangerment means to expose to loss or injury, to jeopardize. *See Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam).

"While both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment." *In re N.M.R.*, No. 04-22-00032-CV, 2022 WL 3640223, at *3 (Tex. App.—San Antonio Aug. 24, 2022, pet. denied) (mem. op.). "Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is

certainly relevant to the child's environment." *Id*. (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *In re J.T.G.*, 121 S.W.3d at 125.

In certain instances, the evidence supporting the trial court's finding of subsection (D) endangerment is intertwined and overlaps with the evidence supporting the trial court's subsection (E) endangerment finding. *Id*. at 131. In such instances, we may consolidate our review of the evidence supporting these findings. *Id*.; *see also In re J.J.V.M.M.*, No. 04-22-00405-CV, 2022 WL 17479144, at *2 (Tex. App.—San Antonio Dec. 7, 2022, no pet.) (mem. op.) (consolidating examination of subsections (D) and (E) findings).

## C. Endangerment

### 1. Evidence

Dickens testified that the Department filed its September 2023 petition following four incidents. First, on October 9, 2022, Mother and Father took the children to the hospital because they had bug bites that turned into open sores and scabs. The Department noted that there was a concern because the children were very dirty. Second, on October 27, 2022, S.F.E.J. told school personnel that something "horrendous" had happened over the weekend and that he had been left unsupervised while his parents were sleeping after partying all night. Third, on January 16, 2023, Father allegedly kicked Mother in the stomach and back while she was pregnant. The altercation left a window in their home broken, and Father was arrested for domestic violence. Fourth, at one point Mother was living with her mother ("Maternal Grandmother"), and she would take the children with her. However, one time Mother returned to Maternal Grandmother's home with bruises, and Maternal Grandmother would not let Mother leave with the children.

Hernandez testified that Mother has a history with the Department regarding medical neglect, neglectful supervision, domestic violence, and substance and alcohol abuse. The Department's main concerns regarding Mother are domestic violence between Mother and Father and substance abuse.

Hernandez testified that Mother and Father have been together for sixteen years. She recounted a cycle where Mother and Father break up whenever Father is incarcerated, and they get back together upon his release. Hernandez noted that Father was incarcerated from February 3, 2024 until September 20, 2024. While Father was incarcerated, Mother was completing the services detailed in her service plan, and the Department's goal was reunification. Indeed, Mother had progressed to the point where she was enjoying unsupervised visits with the children. However, after Father was released, Mother stopped communicating with the Department, and she stopped engaging in social services. Hernandez observed that Mother's lack of communication after Father was released is reminiscent of the beginning of the case. Additionally, S.F.E.J. and E.S.F.E. reported to N.B. that Father was in the house during Mother's September 27, 2024 unsupervised visit. Father's presence concerned Hernandez because Mother and Father have a history of domestic violence. When Hernandez confronted Mother about allowing Father into her home while the children visited, Mother at first denied the allegation, but then she remained quiet. Consequently, Mother's last visit with the children before the December 2024 trial was the one where Father was allegedly in the home. From that point, the Department's goal changed to termination.

As for Mother's substance abuse, Hernandez testified that an October 2023 hair follicle test was positive for drugs. The Department sent Mother for a total of twenty random drug tests over the course of its investigation and the pending termination proceeding. Four other random drug tests were negative. However, on October 25, 2024, Mother stopped submitting to random

drug tests. After Father was released, he engaged in some social services. However, Father tested positive for drugs on October 10, 2024. Hernandez did not believe that Mother can either take care of herself or be protective of the children.

Caylor testified that she began counseling Mother on May 13, 2024, but Mother started missing sessions. Caylor acknowledged that Mother made seven counseling appointments, but she also missed seven appointments. Consequently, Mother was unsuccessfully discharged from counseling in August 2024. Mother was then "reengaged" in therapy, but she never attended. She was unsuccessfully discharged a second time in October 2024. Caylor noted that Mother did not actively engage in counseling, and she did not address her substance abuse, domestic violence, or parenting issues. Moreover, Mother, according to Caylor, did not recognize her role in the children's removal. Caylor did not believe that Mother was empathetic to the impact of her domestic violence and unstable lifestyle on the children. She found such lack of empathy extremely concerning, noted it to be perilous or dangerous, and believed that it was a good reason for not reunifying Mother with the children.

Frias testified that she had provided S.F.E.J. with fifteen individual counseling sessions since August 9, 2024. Frias also provided four virtual joint counseling sessions to Mother and S.F.E.J. Mother was late by forty minutes to two sessions, but Frias accommodated her because the sessions were important.

Frias recommended against increased visitation by Mother because S.F.E.J. "started to regress a little bit" by exhibiting anxiety and getting angry. Frias elaborated that S.F.E.J. "began to go into a ball," that he "put his face in a pillow," cried, became angry, and started "putting himself down" by stating "I'm no good," "I'm not loved," and "I can't be trusted." At one of the joint sessions, when Mother was confronted with the accusation that Father was at her home during an unsupervised visit with the children, Mother hung up and left the virtual session. After the

incident, S.F.E.J. did not want any contact with Mother. He would log on to the Zoom session "in a ball," and once he noticed Mother was a no show, "he would kind of open up a little." Frias elaborated on S.F.E.J.'s relationship with Mother by noting that "[t]here is a lot of hurt in him and he cries a lot and he wants to know why she's lying." Indeed, S.F.E.J. told Frias that Mother lies regularly. Frias did not believe that returning S.F.E.J. to Mother and Father would be a "healthy environment" for him. She further explained that S.F.E.J. has trauma from the domestic violence that he saw.

For her part, Mother testified that she understood that she should not get back together with Father. Indeed, she denied having contact with Father since he was released from jail. Mother did not know why S.F.E.J. said that Father was in the closet hiding during an unsupervised visit mentioned by Hernandez. When pressed on whether Father was hiding in the closet during the unsupervised visit, Mother answered "I don't know." Since visitation was halted, Mother had seen A.M.L.E. and E.S.F.E. only once at a virtual therapy session in October 2024.

Mother acknowledged that a hair follicle test in October 2023 was positive for methamphetamines and that she had missed five drug tests during the months of October, November, and December of 2024. However, she noted that she had also produced negative urine and hair follicle drug tests during other periods of the pending termination proceeding. Mother insisted that she missed the drug tests because of work conflicts and transportation issues. She had asked her case worker for a bus pass, but her case worker did not get back to her until the following week. Mother was "not too sure" it was a coincidence that Father was released from jail in September 2024, and the following month she stopped drug testing.

Mother acknowledged that her landlord had filed for eviction because of overdue rent, but Mother insisted that her landlord was willing to work with her. At the time of trial, Mother was

only $300 behind on rent. Mother asked the Department if there were any organizations that might provide her with rental assistance.

### 2.   Analysis

In Mother's first and second issues, she argues that the evidence supporting the trial court's findings under subsections (D) and (E) is legally and factually insufficient in three aspects. First, Mother argues that "the trial court improperly weighed allegations of [Father's] presence during an unsupervised visit against [Mother] without clear evidence of her involvement." Second, Mother argues that the Department "failed to offer meaningful assistance in ensuring [Mother] had the resources necessary to support her children." Third, Mother argues that "she provided legitimate explanations for [] missed [drug] tests, including lack of transportation, work conflicts, and failure by [the Department] to provide timely notifications."

> In the context of subsection (P), the Texas Supreme Court has held:
>
> While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial *risk* of harm. A reviewing court should not evaluate drug-use evidence in isolation; rather, it should consider additional evidence that a factfinder could reasonably credit that demonstrates that illegal drug use presents a risk to the parent's "ability to parent."

*In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) (emphasis in original). It has also held that evidence of drug use "is also relevant under the (D) and (E) grounds for termination." *Id*. at 281.

Viewing the evidence in its totality — and not in isolation — the trial court may have reasonably found that, based on the testimony of Dickens and Hernandez, when Mother and Father are together, they engage in domestic violence and are prone to drug use. The trial court may have also "weighed" the "allegations of [Father's] presence during an unsupervised visit" together with the evidence that Mother stopped submitting to random drug tests after Father was released and Father tested positive for drugs shortly after his release from incarceration, on October 10, 2024.

The trial court may have reasonably found that Mother's failure to submit to drug tests was the result of her using drugs. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) ("The trial court also could have reasonably inferred that [a parent's] failure to appear for drug testing indicated that [the parent] was avoiding testing because he was using drugs."). Relatedly, the trial court may have also considered Mother's refusal to submit to random drug tests after Father's release together with the couple's history of drug use and Father's positive test result the month after he was released.

Mother's faulting the Department for its alleged failure to provide "meaningful assistance," her "legitimate explanations" for not submitting to random drug tests, and her emphasis on social services and negative drug tests that she completed, may be properly considered as a factual — rather than legal — sufficiency challenge. Nevertheless, Mother's countervailing assertions must be weighed in light of the entire record, including the evidence of domestic violence and substance abuse we have already recounted, and Frias's testimony that S.F.E.J. has trauma from the domestic violence that he saw. When properly framed, Mother's countervailing assertions are not so significant that the trial court could not have reasonably formed a firm belief or conviction to support the predicate grounds under subsections (D) and (E). *See In re J.F.C.*, 96 S.W.3d at 266 ("If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.").

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we conclude that a reasonable factfinder could have formed a firm belief or conviction that Mother "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]," and "engaged in conduct

or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]." TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Thus, the evidence is legally sufficient to support this finding. Further, after considering the entire record, including any disputed or contrary evidence, we conclude that the evidence is factually sufficient to support the trial court's termination under subsections (D) and (E) of the Texas Family Code. Mother's first and second issues are overruled.[3]

## D.     Best Interest

### 1.     Applicable Law

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Family Code. *Id*. § 263.307(b). Additionally, evidence that proves one or more

---

[3] In light of our disposition of Mother's first and second issues, we need not address Mother's third issue. *See In re M.L.*, No. 07-20-00195-CV, 2020 WL 7134933, at *5 (Tex. App.—Amarillo Dec. 4, 2020, no pet.) (mem. op.) ("In light of our conclusion regarding the trial court's findings on subsections (D), (E), and (O), we need not address the findings under subsections (P) or (Q).").

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27.

### 2.  Analysis

#### a.  S.F.E.J., A.M.L.E., and E.S.F.E.

N.B. testified that she has been the foster mother to S.F.E.J., A.M.L.E., and E.S.F.E. for eight months. N.B. recalled that when S.F.E.J. first came into her home, he struggled getting used to structure and consistency. However, he finished the school year with good grades and perfect attendance. In June, S.F.E.J. began taking martial arts classes. N.B. has noticed S.F.E.J. become more social and self-confident. N.B. described similar growth regarding A.M.L.E. and E.S.F.E. When the two girls first began living with N.B. and her husband, they cried for Maternal Grandmother. However, the crying diminished over the summer. They would also get up several times a night crying and screaming from nightmares. The nightmares have also diminished. N.B. recalled A.M.L.E. and E.S.F.E. confirmed that Father was at the home during their September 2024 visit with Mother. After A.M.L.E. and E.S.F.E. confirmed Father's presence, S.F.E.J. broke down crying and told N.B. that he did not want to get Mother in trouble.

N.B. believes S.F.E.J. wants to be adopted by her and her husband based on her understanding of his emotional and behavioral state. N.B. further testified that she would like to

adopt S.F.E.J., A.M.L.E., and E.S.F.E. and that she and her husband are able to provide for the children now and in the future.

"When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). N.B.'s testimony about the personal growth and improvement by S.F.E.J., A.M.L.E., and E.S.F.E. is evidence that may have allowed the trial court to form a firm belief or conviction that the first *Holley* factor (desires of the child) favored termination. *See id.*

### b. A.D.F.E. and L.L.R.F.E.

E.C. had been A.D.F.E. and L.L.R.F.E.'s foster father for seven months at the time of trial. He recalled that the girls enjoy play time, reading, walking the dogs, and playing on jungle gyms. E.C. would like to adopt the girls, and he is willing to facilitate visits between A.D.F.E., L.L.R.F.E., and their older siblings. E.C. recalled that L.L.R.F.E. came back from a visit with Mother with a type of "allergic reaction" that needed medical attention, but Mother did not provide it. Additionally, according to E.C., A.D.F.E. came back from a visit claiming that Mother had struck her.

Although A.D.F.E. and L.L.R.F.E. are too young to express their desires, E.C.'s testimony that they have bonded with him and are well-cared for by him is evidence of the first *Holley* factor (desires of the child) in support of termination. *See In re J.D.*, 436 S.W.3d at 118.

### c. S.F.E.J., A.M.L.E., E.S.F.E., A.D.F.E., and L.L.R.F.E.

With regard to all of the children, the testimony from Dickens, Hernandez, Caylor, and Frias, elaborated above, is evidence supporting the trial court's best interest finding regarding the second (child's present and future emotional and physical needs), third (present or future emotional and physical danger to the child), fourth (the parental abilities of the individuals seeking custody),

seventh (the stability of the home or proposed placement), and eighth (the parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors. Particularly, the evidence that Mother and Father's toxic relationship spurs domestic violence and drug abuse. *See In re K.M.L.*, 443 S.W.3d 101, 116–17 (Tex. 2014) (recognizing that a mother's tumultuous relationship with her mother — together with other evidence — was legally sufficient evidence to support the termination of the mother's parental rights under the best interest prong); *see also In re R.J.*, 579 S.W.3d 97, 116 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) ("Evidence of domestic violence in the home is supportive of a trial court's best-interest finding under the third, fourth, and seventh *Holley* factors: the emotional and physical danger to the child now and in the future, parental abilities, and stability of the home."); *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (considering mother's admission to using methamphetamine around the time of child's removal under the needs of and danger to the child factor in the best-interest analysis).

### d. Disposition

After viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in children's best interest. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2003). The first (child's desires), second (the child's present and future emotional and physical needs), third (any present or future emotional and physical danger to the child), fourth (the parental abilities of the individuals seeking custody), seventh (the stability of the home or proposed placement), and eighth (the parent's acts or omissions which may indicate that the existing parent-child relationship is improper) *Holley* factors weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable

belief or conviction that termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety."). We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination of Mother's parental rights was in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). We overrule Mother's fourth issue.

### E.    Conservatorship

In Mother's fifth issue, she argues that the trial court abused its discretion in making its conservatorship finding upon a legally and factually insufficient termination order. We review the trial court's appointment of a nonparent as sole managing conservator for an abuse of discretion, and we will reverse that appointment only if we determine it is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Having determined the evidence is legally and factually sufficient to support the termination of Mother's parental rights, we further hold the trial court did not abuse its discretion in appointing the Department as the managing conservator of the children. *In re L.G.R.*, 498 S.W.3d 195, 207 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (concluding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights). We overrule Mother's fifth issue.

### III. CONCLUSION

We modify the trial court's parental termination order to correct the spelling of L.L.R.F.E.'s name and affirm as modified.

Rebeca C. Martinez, Chief Justice